## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHAD MELANCON**                                                    **CIVIL ACTION**

**VERSUS**                                                                    **NO. 23-7394**

**BRADLEY WALSH ET AL.**                                     **SECTION "B"(1)**

### ORDER AND REASONS

Before the Court are defendants Bradley Walsh, individually and in his official capacity, and Greg Champagne, individually and in his official capacity as Sheriff of St. Charles Parish's motion to dismiss (Rec. Doc. 8); plaintiff Chad Melancon's opposition (Rec. Doc. 11); and defendants' reply (Rec. Doc. 12). For the following reasons,

**IT IS ORDERED** that defendants Bradley Walsh, individually and in his official capacity, and Greg Champagne, individually and in his official capacity as Sheriff of St. Charles Parish's motion to dismiss (Rec. Doc. 8) is **GRANTED**.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Alleging constitutional and Louisiana state law claims against St. Charles Parish Sheriff Greg Champagne and Sergeant Bradley Walsh, plaintiff Chad Melancon brings a 42 U.S.C. § 1983 action related to his arrest for residential contractor fraud. *See* Rec. Doc. 1. Mr. Melancon sues both Sheriff Champagne and Sergeant Walsh in their individual and official capacities. *Id.* at 2–3. As Mr. Melancon recites the background information, a warrant for his arrest was applied for by Sergeant Walsh after a complaint of residential contractor fraud; the warrant was issued by state court Judge Connie Aucoin on December 27, 2022. *Id.* at 4. On December 30, 2022, Mr. Melancon was arrested pursuant to the issued warrant; he posted bond on January 4, 2023. *Id.* at 5. Two months later, the charges were refused by St. Charles Parish. *Id.*

1

Mr. Melancon contends he was a victim of a false arrest. *See id.* at 6. He takes particular issue with Sergeant Walsh's issuance of a supplemental report—after the warrant application but before Mr. Melancon's arrest—that was not shared with Judge Aucoin. *Id.* at 4–5. Mr. Melancon insists the supplemental report establishes that he was alleging money owed him and, thus, that he "did not abscond with all of the alleged victim's monies." *Id.* at 4.

Through § 1983, Mr. Melancon alleges unlawful arrest, abuse of process, malicious prosecution, and *Monell* liability. *Id.* at 7–13. Additionally, Mr. Melancon raises state law claims of intentional infliction of emotional distress and negligence, contends the St. Charles Parish Sheriff's Office is generally liable for Sergeant Walsh's actions through the theory of *respondeat superior*, and requests attorney's fees and punitive damages. *Id.* at 6, 13–14.

Defendants filed a motion dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is currently before the Court. *See* Rec. Doc. 8. Plaintiff opposes the motion. *See* Rec. Doc. 11.

## II.  LAW AND ANALYSIS

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (discussing Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

Although motions to dismiss are evaluated by the content in the complaint, the United States Supreme Court has described the extent of possible evidence: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007) (citation omitted). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation omitted).

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead 'two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal

right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (discussing 42 U.S.C. § 1983)). Although this pleading requirement does not heighten the burden on a § 1983 plaintiff, the Fifth Circuit has observed that the assertion or implication of a defendant's qualified immunity "adds a wrinkle to § 1983 pleadings." *Id.* at 266–67. "At the earliest possible stage of litigation," the court should evaluate the defense from having to stand trial. *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)). Further, while applying the Rule 8 standard, "the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995).

Although Mr. Melancon leaves the doctrine of qualified immunity unaddressed in his complaint, defendants substantially argue for its applicability on the claims against both Sheriff Champagne and Segreant Walsh. *See* Rec. Doc. 8-1 at 8–13. In response to the asserted defense, Mr. Melancon counters that Sergeant Walsh lacked probable cause for his arrest warrant and failed to alert Judge Aucoin of his later pre-arrest findings. *See* Rec. Doc. 11 at 11 ("[B]ecause Sergeant Walsh failed to exercise due care in properly reporting the information crucial to the determination of the existence of probable cause, the arrest warrant issued by Judge Aucoin based on Sergeant Walsh's findings was not valid on its face and cannot serve to immunize him from Mr. Melancon's claims for false arrest and imprisonment."). As parties have briefed the qualified immunity issue, we apply the standard pleading requirements to Mr. Melancon's complaint, evaluating his allegations in a light most favorable to him, before considering the contested defense. *See Arnold*, 979 F.3d at 269 ("Ordinarily, after determining that a plaintiff had plausibly alleged constitutional violations, we would turn to the qualified-immunity analysis.").

4

### B. Unlawful Arrest and the Fourth Amendment

Central to Mr. Melancon's claims, he contends his arrest "was objectively unreasonable under the circumstances and not based on probable cause[.]" Rec. Doc. 1 at 9 ¶32. This allegation implicates both constitutional violations of the Fourth and Fourteenth Amendments. *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). For a plaintiff to successfully plead false arrest, he "must plausibly allege that [the defendant] did not have probable cause to arrest him." *Arnold*, 979 F.3d at 269 (quotation omitted). Generally, the issuance of an arrest warrant by a neutral magistrate insulates an arresting officer from civil liability. *See McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citation omitted) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."). However, where the arrest warrant facially is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" or relies on material misrepresentations or omissions, an officer may be liable for a false arrest. *See Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir.), *cert. denied sub nom. Reyna v. Wilson*, 143 S. Ct. 425 (2022), and *cert. denied*, 143 S. Ct. 426 (2022) (first citing *Malley v. Briggs*, 475 U.S. 335 (1986); then citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

To state his claim, Mr. Melancon relies on Sergeant Walsh's arrest warrant. *See, e.g.,* Rec. Doc. 1 at 4 ¶12 ("Officer Walsh presented his arrest warrant affidavit to Judge Connie Aucoin, who—based solely and exclusively on the facts attested to by Officer Walsh—issued an arrest warrant on December 27, 2022."). Defendants attach the warrant to their motion to dismiss, bringing the document properly before the Court. *See* Rec. Doc. 8-2; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation omitted).

5

Serving as the allegation in the arrest warrant, Louisiana Revised Statute § 14:202.1 defines residential contractor fraud as:

> the misappropriation or intentional taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations by a person who has contracted to perform any home improvement or residential construction, or who has subcontracted for the performance of any home improvement or residential construction.

La. Rev. Stat. § 14:202.1. Thus, the possible elements of the crime include (1) the misappropriation of something of value, (2) by one contracted to perform home improvement, (3) without the consent of the contracting party. It is undisputed that the residential contractor fraud allegation is based upon a home construction contract between Mr. Melancon and the alleged victim. *See, e.g.,* Rec. Doc. 11 at 4 (plaintiff's opposition) ("This matter originally arose out of a financial dispute between a residential construction contractor, Chad Melancon, and a homeowner, Christy Steele, over payment for renovations to Ms. Steele's home after Hurricane Ida."). In the arrest warrant, the alleged victim is described as producing documents that showed a $20,000 discrepancy between contract and bill; various items charged that were purchased by the alleged victim and not by Mr. Melancon; cabinets that appeared pre-used and not custom-built; and the payment of items that were undelivered. *See* Rec. Doc. 8-2 at 2–3.

Mr. Melancon does not dispute these allegations were made; rather, he finds in them a civil dispute alone and faults Sergeant Walsh for "fail[ing] to speak with Mr. Melancon to obtain his version of the facts." Rec. Doc. 11 at 4–5. Neither contention, however, states the measure for evaluating the existence of probable cause to arrest. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted).

6

From the face of the arrest warrant, we cannot say it was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Wilson*, 33 F.4th at 206 (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)).

This conclusion is further supported by Judge Aucoin's decision to sign the arrest warrant. *See* Rec. Doc. 8-2 at 5. By so signing, Judge Aucoin read Sergeant Walsh's sworn-out facts and determined probable cause existed for Mr. Melancon's arrest for residential contractor fraud. Put another way, Judge Aucoin understood there to be a fair probability that the criminal elements were present. This conclusion—based on an assessment of the factual allegations and the express law—discredits Mr. Melancon's other facial invalidity argument, namely, that none of the inferential actions listed in Louisiana Revised Statute § 14:202.1(A)(1)–(7) is cited in the arrest warrant. *See* Rec. Doc. 11 at 9–10. As previously noted, the arrest warrant did not so lack indicia of probable cause to make it facially unreasonable.

Facially valid, the warrant is also not undone by Mr. Melancon's later-in-time allegation of Sergeant Walsh's withholding of a supplemental report. Specifically, Mr. Melancon contends that the report authored by Sergeant Walsh after the warrant application but before the arrest showed that "Melancon was also alleging additional monies owed to him through the victim's change order." Rec. Doc. 1 at 4 ¶13. From this additional information, Mr. Melancon avers a legal conclusion:

> In other words, Melancon did not abscond with all of the alleged victim's monies . . . . The presentation of the Supplemental Report to Judge Aucoin, showing that both the alleged victim and Melancon were in a financial dispute over the project, would have resulted in a recall of the warrant as the dispute was clearly civil in nature.

*Id*. at 4–5 ¶¶13, 15. Not only is such a conclusion conclusory, it also is legally deficient. Mr. Melancon does not contend that the supplemental report retracted allegations upon which probable

cause was established. Rather, he avers the supplemental report presents the allegation that Mr. Melancon had a monetary demand against the victim. Such an accusation does not thereby strip the residential contractor fraud elements contained in the arrest warrant, as discussed above. Simply, any "corrected content" does not make the arrest warrant affidavit insufficient for a finding of probable cause.

These facts are at odds with caselaw findings of a false arrest based on affidavit omission or misrepresentation. *See Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (corrected content making affidavit insufficient where detective "deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated" with the ones involved in a shootout); *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons."). Interpreting the allegations in a light most favorable to Mr. Melancon, we cannot conclude plaintiff has stated a claim for § 1983 liability from a false arrest.

### C.  Remaining Constitutional Claims

With probable cause established, Mr. Melancon's other constitutional claims also fail on the pleading level. Regarding Mr. Melancon's allegation of malicious prosecution, the Fifth Circuit recently clarified a plaintiff's required showing: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (discussing *Thompson v. Clark*, 142 S. Ct. 1332, 1337 n.2 (2022)). As we have determined probable cause to have been present, we need not address any other malicious prosecution element. The claim must be dismissed.

Mr. Melancon also alleges *Monell* liability of the St. Charles Parish Sheriff's Office. Rec. Doc. 1 at 11–13. A municipality may be sued for a constitutional violation by an employee only where "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Here, an expansive *Monell* liability discussion is unnecessary. As any § 1983 suit requires a constitutional violation performed under the color of law, Mr. Melancon's failure to plead the absence of probable cause—and, thereby, state a constitutional violation—stops any further *Monell* analysis. Nonetheless, Mr. Melancon's *Monell* theory is speculative at best, insisting on municipal liability on a failure-to-train basis, namely, that Sergeant Walsh's lack of courses on contractor fraud made him unable to evaluate elements of the crime and was a driving force to probable-cause-less arrests. *See* Rec. Doc. 1 at 12 ¶¶51–53. Such an allegation is conclusory and does not plausibly plead a failure-to-train cause of action. *See Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022), *cert. denied sub nom. Henderson v. Harris Cnty.*, 143 S. Ct. 2661 (2023) (quotation omitted) ("To establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.").

Mr. Melancon's claim of punitive damages also is defeated on a failure to plead a constitutional violation alone. "Under § 1983, punitive damages may be awarded only if the official conduct is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994) (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). As discussed above, we find no claim for the violation of a constitutional right. Even if present, we also seriously question Mr. Melancon's pleading of Sergeant Walsh's "reckless or callous indifference," a term the Fifth Circuit has defined as "'recklessness in its subjective form,' i.e. 'a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations.'" *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (further citation omitted)). Here, aside from probable cause-related arguments, Mr. Melancon avers entitlement of punitive damages because his arrest occurred "right before the New Year's Holiday which would keep Melancon away from his family and children over the holiday." Rec. Doc. 1 at 14 ¶63. Such a term of incarceration does not implicate constitutional due process protections. *See, e.g., Soto v. Ortiz*, No. 11-164, 2012 WL 12883340, at *5 (W.D. Tex. Jan. 11, 2012), *aff'd*, 526 F. App'x 370 (5th Cir. 2013) (concluding in the qualified immunity context, "though it need not be decided here, the Court finds that the five-day confinement of the Plaintiff over a holiday weekend, based on a facially valid warrant, was not a sufficient time lapse to invoke the exception to immunity described in *Baker v. McCollan,* 443 U.S. 137 (1979)"). Further, no allegation raises Sergeant Walsh's actions to "reckless or callous indifference." Mr. Melancon presents no basis for punitive damages.

Other asserted legal theories lack an independent basis in a § 1983 suit. For instance, the Fifth Circuit has described Mr. Melancon's claim of abuse of process as wrapped up in a Fourth

Amendment claim of unreasonable seizure. *See Morgan v. Chapman*, 969 F.3d 238, 247 (5th Cir. 2020). "Such claims, rooted in the violation of constitutional rights, are actionable under § 1983. But those claims 'are not claims for [abuse of process] and labeling them as such only invites confusion.'" *Id.* (quoting *Castellano v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003)) (alteration in original). As Mr. Melancon fails to plead a § 1983 false arrest claim, he also fails on his abuse of process claim. Similarly, Mr. Melancon's argument for *respondeat superior* liability might touch on issues tangentially related to the § 1983-specific *Monell* liability, but this theory is not applicable in § 1983 litigation. *See Blanchard-Daigle v. Geers*, 802 F. App'x 113, 117 (5th Cir. 2020) ("[The *Monell*] exception is applied only in extreme circumstances in order to not run afoul of the rule that municipalities cannot be held liable via *respondeat superior*."); *Jason v. Tanner*, 938 F.3d 191, 197 (5th Cir. 2019) (describing the *Monell* court's rejection of "pure respondeat superior liability under § 1983").

In sum, all of Mr. Melancon's federal claims fail. As the contentions rely on the affidavit for the arrest warrant—which is before the Court—amendment of the complaint would be futile. *See Jones v. Greninger,* 188 F.3d 322, 327 (5th Cir. 1999); *see also Juarez v. Short,* 84 Fed. App'x 420, 424 (5th Cir. 2003).

### D.  State Law Claims

As Mr. Melancon's § 1983 claims must be dismissed, the Court need not analyze his supplemental state law claims. *See* Rec. Doc. 1 at 1–2 ¶2 ("Plaintiff further invokes jurisdiction of this Court under 28 U.S.C. §1367 to adjudicate claims arising under the Laws of the State of Louisiana including, but not limited to, article 2315, et seq., of the Louisiana Civil Code and the Louisiana Constitution of 1974."). Dismissal of supplemental state law claims is appropriate. *See Dixon v. Ford Motor Credit Co.,* 252 F.3d 1356, at *2 (5th Cir. 2001).

### E.  Qualified Immunity

As we have determined that Mr. Melancon fails to state a claim, we need not consider defendants' defense of qualified immunity. However, from a concern for thoroughness, we conclude defendants are also shielded from liability through qualified immunity. "When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019). To carry the burden, the plaintiff "must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). As to the "clearly established" prong, "the court asks whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (emphasis in original) (citation omitted). As applied to probable cause, qualified immunity presents "a significant hurdle" to surmount in a § 1983 challenge: "There must not even 'arguably' be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (quotation omitted, cleaned up).

In response to the qualified immunity defense, Mr. Melancon argues that Sergeant Walsh lacked probable cause for his arrest warrant. *See* Rec. Doc. 11 at 11. As previously noted, in his arrest warrant application, Sergeant Walsh described the alleged victim as producing documents that showed a $20,000 discrepancy between contract and bill; various items charged that were purchased by the alleged victim and not by Mr. Melancon; cabinets that appeared pre-used and not

custom-built; and the payment of items that were undelivered. *See* Rec. Doc. 8-2 at 2–3. Judge Aucoin then signed the arrest warrant. *See* Rec. Doc. 8-2 at 5. Although Sergeant Walsh later received information that Mr. Melancon was contending to be owed additional sums, we cannot say that neither probable cause (as previously concluded) nor merely arguable probable cause does not exist for Mr. Melancon's arrest. Therefore, qualified immunity attaches. On this ground, Mr. Melancon's claims must be dismissed.

New Orleans, Louisiana this 1st day of April 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE